IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| KEN W. SANTOS HERNANDEZ, | : | |
|     Plaintiff, | : | |
| | : | |
| v. | : | CIVIL ACTION NO. 22-CV-4187 |
| | : | |
| DELAWARE COUNTY OF | : | |
| PENNSYLVANIA, *et al.*, | : | |
|     Defendants. | : | |

**MEMORANDUM**

**MCHUGH, J.**                                                                                      **JANUARY 20, 2023**

*Pro se* Plaintiff Ken W. Santos Hernandez is pretrial detainee at the George W. Hill Correctional Facility ("GWHCF"). He filed this civil rights action pursuant to 42 U.S.C. § 1983 alleging that the conditions of his confinement are unconstitutional. Hernandez seeks to proceed *in forma pauperis*. For the following reasons, the Court will grant Mr. Hernandez leave to proceed *in forma pauperis* and dismiss his Complaint without prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii). Hernandez will be permitted to file an amended complaint.

**I.    FACTUAL ALLEGATIONS**

Mr. Hernandez raises various claims against prison officials associated with GWHCF. Many of his claims are asserted against groups of prison officials without identifying the officials by name. Hernandez lists the following Defendants: (1) Delaware County; (2) Laura K. Williams, Warden; (3) Unknown Prison Deputy Wardens; (4) Unknown Prison Administrators; (5) Unknown Prison Supervisors; (6) Unknown Prison Officials; (7) Dana Keith, Librarian; (8) Unknown Geo Group Inc. Warden; (9) Unknown Geo Group Inc. Deputy Wardens; (10) Unknown Geo Group Inc. Administrators; (11) Unknown Geo Group Inc. Supervisors;

(12) Unknown Geo Group Inc. Prison Officials.  (Compl. at 2.)¹  He asserts claims against all Defendants in their official and individual capacities.  (Compl. at 3-7.)

Mr. Hernandez alleges that "prison officials placed [him] in an overcrowded, unsanitary, unsafe intake cell for about a week" where he was subjected to "extreme cold temperatures" and deprived of a "a mattress, cleaning products, showers, and a clean toilet."  (*Id*. at 9.)²  He also alleges that he is being deprived of "sanitary shower facilities because the shower walls and floor are covered with grim and black mold that could seriously affect [his] health."  (*Id*.)  Mr. Hernandez further states that he is being denied "COVID-19 precautions" such as cleaning products and that because of his diagnosed asthma, he is "medically vulnerable" to COVID-19 and other viruses.  (*Id*.)  Hernandez also alleges that due to "inadequate legal assistance [and] access to the courts," he missed a filing deadline to bring a petition for review.  (*Id*.)  The public defender's office allegedly "changed counsel midway into the 30-day deadline."  (*Id*.)  Finally, Hernandez alleges that prison officials confiscated his legal papers.  (*Id*.)  Based on these allegations, Mr. Hernandez asserts constitutional claims under § 1983 and seeks money damages.  (*Id*. at 10.)

## II.   STANDARD OF REVIEW

The Court will grant Hernandez leave to proceed *in forma pauperis* because it appears that he is incapable of paying the fees to commence this civil action.  Accordingly, 28 U.S.C. § 1915(e)(2)(B)(ii) requires the Court to dismiss the Complaint if it fails to state a claim.  Whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard

---

¹ The Court adopts the pagination supplied by the CM/ECF docketing system.

² Hernandez attaches to his Complaint various grievances he filed and prison responses to those grievances.  (*See* Compl. at 17-40.)

applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), *see Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999), which requires the Court to determine whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted); *Talley v. Wetzel*, 15 F.4th 275, 286 n.7 (3d Cir. 2021). "At this early stage of the litigation,' '[the Court will] accept the facts alleged in [the pro se] complaint as true,' 'draw[] all reasonable inferences in [the plaintiff's] favor,' and 'ask only whether [that] complaint, liberally construed, . . . contains facts sufficient to state a plausible [] claim.'" *Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021) (quoting *Perez v. Fenoglio*, 792 F.3d 768, 774, 782 (7th Cir. 2015)). Conclusory allegations do not suffice. *Iqbal*, 556 U.S. at 678. As Hernandez is proceeding *pro se*, the Court construes his allegations liberally. *Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) (citing *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244-45 (3d Cir. 2013)).

### III.   DISCUSSION

Mr. Hernandez asserts constitutional claims against Defendants pursuant to § 1983, the vehicle by which federal constitutional claims may be brought in federal court. "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). In a §1983 action, the personal involvement of each defendant in the alleged constitutional violation is a required element, and, therefore, a plaintiff must allege how each defendant was involved in the events and occurrences giving rise to the claims. *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1998).

### A. Claims against Delaware County and Official Capacity Claims

Hernandez appears to bring claims against Delaware County. He also appears to bring official capacity claims against employees of GWHCF and employees of the GEO Group, a corporation formerly under contract to provide services at GWHCF.[3] Official capacity claims are indistinguishable from claims against the entity that employs the officials. *See Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985) ("Official-capacity suits . . . 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'") (quoting *Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658, 690, n.55 (1978)). Thus, "an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity." *Id*. Since Hernandez's official capacity claims against all individual Defendants are essentially the same as his claims against Delaware County or the GEO Group, the Court will analyze these claims together according to the standards for pleading a municipal liability claim.

To plead a § 1983 claim against a municipality or a company that contracts with a municipality to provide correctional services, a plaintiff must allege that the municipality or company's policy or custom caused the violation of his constitutional rights. *See Monell*, 436 U.S. at 694; *Natale v. Camden Cty. Corr. Facility*, 318 F.3d 575, 583-84 (3d Cir. 2003) (acknowledging that entity contracted to perform medical services for county jail is state actor for purposes of section 1983). "To satisfy the pleading standard, [the plaintiff] must . . . specify

---

[3] In April of 2022, Delaware County assumed full operational control of GWHCF from the GEO Group. *See* Delaware County Officially Assumes Control of George W. Hill Correctional Facility (April 6, 2022), https://www.delcopa.gov/publicrelations/releases/2022/delcoofficiallyassumescontrolofgeorgew hillcf.html (last accessed January 11, 2023). During the relevant events in Hernandez's Complaint, the GEO Group controlled GWHCF.

what exactly that custom or policy was." *McTernan v. City of York, PA*, 564 F.3d 636, 658 (3d Cir. 2009). "'Policy is made when a decisionmaker possess[ing] final authority to establish municipal policy with respect to the action issues an official proclamation, policy, or edict.'" *Estate of Roman v. City of Newark*, 914 F.3d 789, 798 (3d Cir. 2019) (quoting *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1480 (3d Cir. 1990)). "'Custom, on the other hand, can be proven by showing that a given course of conduct, although not specifically endorsed or authorized by law, is so well-settled and permanent as virtually to constitute law.'" *Id*. (quoting *Bielevicz v. Dubinon*, 915 F.2d 845, 850 (3d Cir. 1990)).

Nowhere in the Complaint does Mr. Hernandez allege that the conditions to which he was subjected during intake or otherwise, or his inability to access legal counsel or the courts were the result of policy or custom promulgated by GWHCF or the Geo Group. Accordingly, Hernandez fails to state a plausible *Monell*/official capacity claim against Delaware County or any of the unnamed individual GWHCF or Geo Group Defendants.

### B. Individual Capacity Claims/Lack of Personal Involvement

Hernandez also asserts claims against Defendants in their individual capacity. He alleges that Defendants subjected him to unconstitutional conditions of confinement and deprived him of cleaning products to help protect against COVID-19. The Court understands Hernandez to assert claims that the conditions of his confinement amounted to punishment in violation of the Due Process Clause.[4] *See Bell v. Wolfish*, 441 U.S. 520, 535 (1979) (explaining that pretrial detainees are protected from "punishment" by the Due Process Clause of the Fourteenth Amendment). Hernandez also alleges that due to "inadequate access to legal assistance [and] access to the

---

[4] Because Hernandez was a pretrial detainee at the time of the events in question, the Fourteenth Amendment, rather than the Eighth Amendment, governs his claims. *Hubbard v. Taylor*, 399 F.3d 150, 166 (3d Cir. 2005).

5

courts," he was "unable to bring a petition for review." (Compl. at 9.) Based on this allegation, the Court understands Hernandez to assert an access to courts claim under the First and Fourteenth Amendments and a claim for unreasonable interference with legal counsel under the Sixth Amendment.

Mr. Hernandez's claims fail as pled because he does not state how any of the named Defendants were personally involved in the alleged violation of his rights  As noted above, an individual must be personally involved in violating a plaintiff's rights to be liable under § 1983. *See Rode*, 845 F.2d at 1207 ("A defendant in a civil rights action must have personal involvement in the alleged wrongs."); *see also Iqbal*, 556 U.S. at 676 (explaining that "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution").  Hernandez states that "Defendants personally participated at least in part under color of state law, in unlawful deprivation of Plaintiff's rights." (Compl. at 8, 10.)  This vague and conclusory statement is not sufficient to overcome the requirement that Defendants be personally involved in violation of a plaintiff's constitutional rights.  Hernandez is permitted to name individuals for whom he does not have any identifying information using "John Doe #1, John Doe #2, etc."  However, he cannot group all prison officials together in broad-based categories as he has done without articulating how each defendant was involved in the alleged violation of his rights. *See Lawal v. McDonald*, 546 F. App'x 107, 113 (3d Cir. 2014) (concluding that the plaintiff's collective use of the word "Defendants" failed to adequately plead which specific defendant engaged in the specific conduct alleged by the plaintiff).

Moreover, Hernandez has named two groups of supervisors as Defendants – "Unknown Prison Supervisors" and "Unknown Geo Group Inc. Supervisors" – however, he has failed to

allege any facts to support a basis for supervisory liability. He has not alleged that any specific supervisor defendant, named or unnamed, acted "'with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused [the] constitutional harm." *Barkes v. First Corr. Med., Inc.*, 766 F.3d 307, 316 (3d Cir. 2014), *reversed on other grounds by Taylor v. Barkes*, 135 S. Ct. 2042 (2015) (quoting *A.M. ex rel. J.M.K. v. Luzerne Cty. Juvenile Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004) (alteration in original)). Nor has he alleged that any supervisor defendant "participated in violating [his] rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in the subordinate's unconstitutional conduct." *Id*. In addition, to the extent Hernandez named certain groups of Defendants simply because they are high level officials (e.g., "Unknown Prison Deputy Wardens," "Unknown Prison Administrators," "Unknown Geo Group Inc. Deputy Wardens," "Unknown Geo Group Inc. Administrators," etc.), this also is not sufficient to state a plausible claim. *See Saisi v. Murray*, 822 F. App'x 47, 48 (3d Cir. 2020) (generalized allegations that a supervisory defendant is "in charge of" or "responsible for" an office or facility are insufficient to allege personal involvement in an underlying constitutional violation).

      Finally, to the extent that Mr. Hernandez brings claims against any Defendant based solely on their involvement in denying his grievances, such claims are not viable. This is because participation in the grievance process does not, without more, establish involvement in the underlying constitutional violation. *See Curtis v. Wetzel*, 763 F. App'x 259, 263 (3d Cir. 2019) (*per curiam*) ("The District Court properly determined that Defendants . . . who participated only in the denial of [the plaintiff]'s grievances – lacked the requisite personal involvement [in the conduct at issue].")*; Folk v. Prime Care Med.*, 741 F. App'x 47, 51 (3d Cir.

2018) (*per curiam*) ("Although some of these defendants were apparently involved in responding to some of [the plaintiff]'s prison grievances, there are no allegations linking them to the underlying incidents and thus no basis for liability based on those later grievance reviews.").

Accordingly, the Complaint fails to state a plausible claim against any Defendant. Hernandez's claims fail as pled for other reasons, as the Court will address below.

### C. Claims based on the Conditions of Hernandez's Confinement

Hernandez challenges the conditions of his confinement during intake, which lasted "about a week." (Compl. at 9.) He also alleges that he is being deprived of sanitary showers as the shower walls and floors are covered with "grim and black mold." (*Id*.) "Under the Due Process Clause [of the Fourteenth Amendment], a pretrial detainee 'may not be punished prior to an adjudication of guilt in accordance with due process of law.'" *Camps v. Giorla*, 843 F. App'x 450, 452 (3d Cir. 2021) (*per curiam*) (quoting *Hubbard v. Taylor*, 538 F.3d 229, 231 (3d Cir. 2008)). To establish a basis for a Fourteenth Amendment violation, a prisoner must allege that his conditions of confinement amount to punishment. *Bell*, 441 U.S. 520, 538 (1979); *see also Camps*, 843 F. App'x at 452 ("[A] court must determine whether the conditions complained of were imposed for the purpose of punishment or whether it is merely incidental to a legitimate governmental objective."). "Unconstitutional punishment typically includes both objective and subjective components." *Stevenson v. Carroll*, 495 F.3d 62, 68 (3d Cir. 2007). "[T]he objective component requires an inquiry into whether the deprivation was sufficiently serious and the subjective component asks whether the officials acted with a sufficiently culpable state of mind." *Id*. (internal quotations and alterations omitted).

In that regard, "a 'particular measure amounts to punishment when there is a showing of express intent to punish on the part of detention facility officials, when the restriction or

condition is not rationally related to a legitimate non-punitive government purpose, or when the restriction is excessive in light of that purpose.'" *Bistrian v. Levi*, 696 F.3d 352, 373 (3d Cir. 2012) (quoting *Stevenson*, 495 F.3d at 68); *Steele v. Cicchi*, 855 F.3d 494, 504 (3d Cir. 2017). Courts should consider the totality of the circumstances in evaluating such a claim. *Bistrian*, 696 F.3d at 373. Furthermore, "[i]n determining whether restrictions or conditions are reasonably related to the Government's interest in maintaining security and order and operating the institution in a manageable fashion," courts are obligated to keep in mind that "such considerations are peculiarly within the province and professional expertise of corrections officials . . . ." *Stevenson*, 495 F.3d at 68 n.3. Only conditions of confinement that "cause inmates to endure such genuine privations and hardship over an extended period of time" violate the Fourteenth Amendment. *Hubbard*, 538 F.3d at 233 (internal quotations omitted).

      Hernandez's claims about the conditions of his confinement fail as pled because, as noted above, he has not tied any Defendant's specific conduct to the alleged constitutional violations. The claims also fail because they are vague and factually undeveloped. Hernandez alleges that he was placed in an "overcrowded, unsanitary and unsafe intake cell for about a week" where he was subjected to "extreme cold temperatures" and denied "a mattress, cleaning products, showers, and a clean toilet. (Compl. at 9.) Mr. Hernandez has not alleged any facts about what it was that made the intake cell unsanitary, unsafe, or overcrowded. These conclusory allegations, without more, fail to raise an inference that the conditions were intended as punishment. Hernandez has also not provided sufficient factual context to his claim that he was subjected to "extreme cold temperatures," such as how often and how long he was subjected to the cold, and how he was harmed by it. *DiMaio v. George W. Hill Intake Dep't*, 367 F. Supp. 3d 301, 306 (E.D. Pa. 2019) ("DiMaio has not established a plausible constitutional violation

9

because he has not alleged that the overcrowded conditions amounted to punishment, deprived him of a basic need, or otherwise caused him harm."). In addition, some of the conditions alleged by Hernandez, even if pled with sufficient specificity, may not rise to the level of constitutional violation. *See, e.g., Hubbard*, 538 F.3d at 232-35 (triple-celling of pretrial detainees, some of whom were made to sleep on floor mattresses for three to seven months did not amount to punishment); *Carroll v. George W. Hill Corr. Facility*, No. 22-1720, 2022 WL 17539212, at *1, 10 (E.D. Pa. Dec. 8, 2022) (holding that denial of shower for eight days while placed in intake cell did not constitute a Fourteenth Amendment violation); *Hall-Wadley v. Maint. Dep't*, 386 F. Supp. 3d 512, 519 (E.D. Pa. 2019) (concluding that plaintiff's allegation that "black mold exists in the shower" was not sufficient to state a Fourteenth Amendment claim where the plaintiff did not allege that he suffered any harm from the mold).

Although a pretrial detainee like Mr. Hernandez can allege under § 1983 that the conditions of his confinement, in combination, amounted to punishment, Hernandez's claims as pled are not plausible. He provides only vague and conclusory allegations, and has not identified any specific actions by any individual Defendant. Accordingly, his Fourteenth Amendment conditions claims will be dismissed.

### D. Claims Based on Access to Legal Counsel and Access to the Courts

Hernandez alleges that he missed the 30-day deadline to file a "petition for review" due to "inadequate access to legal assistance [and] access to courts," and because "the public defender's office change[d] counsel" halfway through the 30-day deadline. (Compl. at 9.) He also alleges that he has not been able to "reasonably access the law library," which he alleges has "made it almost impossible to litigate [his] case, file motion, research case laws, etc." (*Id.* at 33.) The Court understands Hernandez to assert a claim for interference with the right to counsel

under the Sixth Amendment and an access to courts claim under the First and Fourteenth Amendments.[5]

Mr. Hernandez fails to allege a plausible Sixth Amendment claim. "Under the Sixth Amendment, a pretrial detainee has a right to utilize counsel to defend against a criminal case that the state has brought against him." *Prater v. City of Philadelphia*, No. 11-1618, 2015 WL 3456659, at *4 (E.D. Pa. June 1, 2015) (on remand) (citing *Benjamin v. Fraser*, 264 F.3d 175, 186 (2d Cir. 2001)). Prison restrictions that impair a pretrial detainee's ability to access to criminal counsel should be evaluated in light of "safeguarding institutional security." *Fraser*, 264 F.3d at 187 (quoting *Bell*, 441 U.S. at 547). The restriction is unconstitutional when it "unreasonably burden[s] the inmate's opportunity to consult with his attorney and to prepare his defense." *Id.*; *see also Prater*, 2015 WL 3456659, at *4. Here, Hernandez has not alleged any prison restriction or any prison official action that burdened his ability to access criminal counsel. Instead, he alleges that he had "inadequate access to legal assistance" but does not provide any facts to support this conclusory allegation. To the extent Hernandez bases his claim on the substitution of public defenders during his criminal proceeding, the claim fails because it

---

[5] To the extent that Hernandez also asserts a due process claim based on the loss of his legal papers, such claim fails. A prisoner in Pennsylvania cannot state a constitutional claim based on the loss of his property because he has adequate postdeprivation remedies available to him. *See Spencer v. Bush*, 543 F. App'x 209, 213 (3d Cir. 2013) ("'[A]n unauthorized intentional deprivation of property by a state employee does not constitute a violation of the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful postdeprivation remedy for the loss is available.'" (quoting *Hudson v. Palmer*, 468 U.S. 517, 533 (1984))); *Shakur v. Coelho*, 421 F. App'x 132, 135 (3d Cir. 2011) (*per curiam*) (explaining that the Pennsylvania Tort Claims Act provides an adequate remedy for a willful deprivation of property); *see also Shareef v. Moore*, 844 F. App'x 487, 488 (3d Cir. 2021) (*per curiam*) (finding no due process violation where inmate had access to adequate post-deprivation remedy to address confiscation and destruction of property and legal papers), *cert. denied*, 142 S. Ct. 146 (2021); *Tillman v. Lebanon Cty. Corr. Facility*, 221 F.3d 410, 422 (3d Cir. 2000) (holding that prison grievance system provides adequate postdeprivation remedy to satisfy due process).

is not based on any action taken by a prison official.  *See Robison v. Vols*, No. 20-242, 2021 WL 6135454, at *5 (W.D. Pa. Dec. 29, 2021) ("Robison has alleged no facts to support an inference that any prison official interfered with his attorney-client relationship or ability to communicate with his attorney in any criminal proceeding.").  Accordingly, Mr. Hernandez's Sixth Amendment claim will be dismissed.

      Hernandez also fails to state a plausible access to courts claim based on allegations that he was denied reasonable access to the law library.  The inability of pretrial detainees to access legal resources such as the law library is analyzed as an access-to-courts claim under the First and Fourteenth Amendments.  *Prater v. City of Philadelphia*, 542 F. App'x 135, 137 (3d Cir. 2013) (*per curiam*); *see also Monroe v. Beard*, 536 F.3d 198, 205 (3d Cir. 2008) ("Under the First and Fourteenth Amendments, prisoners retain a right of access to the courts.").  To state a claim for denial of access to courts, a plaintiff must show that he "suffered 'an actual injury' because of his alleged inability to access the prison library."  *Prater*, 542 F. App'x at 137 (quoting *Lewis v. Casey*, 518 U.S. 343, 349 (1996)).  A detainee states an actual injury by alleging "that a 'nonfrivolous' and 'arguable' claim was lost because of the denial of access to the courts."  *Tinsley v. Giorla*, 369 F. App'x 378, 381 (3d Cir. 2010); *see also Sanders v. Rose*, 576 F. App'x 91, 94 (3d Cir. 2014) ("[T]o sufficiently plead an access-to-courts claim . . . a non-prisoner must plead that 'official acts . . . may allegedly have caused the loss . . . of a meritorious case.'" (quoting *Christopher v. Harbury*, 536 U.S. 403, 416 (2002)).

      Mr. Hernandez does not provide sufficient facts about his alleged inability to "reasonably access the law library" (Compl. at 33), including when and how often he requested access and the circumstances surrounding the denial of those requests.  Moreover, Hernandez does not allege an actual injury.  He states only that he was prevented from filing a "petition for review"

but does not provide any facts about what the petition was, what relief it sought, or what claim or defense was lost as a result of his inability to file the petition or to otherwise access the law library. Such vague and generalized allegations are not sufficient to state a plausible claim. *See Prater*, 542 F. App'x at 137 (affirming denial of access-to-courts claim where the pretrial detainee had "not offered any other explanation of how his inability to access the library affected his criminal proceedings"); *Diaz v. Holder*, 532 F. App'x 61, 63 (3d Cir. 2013) (*per curiam*) (affirming dismissal of access-to-courts claims where plaintiff failed to tie alleged deficiencies in library to harm in underlying action). In addition, it appears that Hernandez was represented by legal counsel during the pendency of his criminal case. *See Prater*, 542 F. App'x at 137 n.4 (stating that the right to access to courts may be satisfied if the pretrial detainee had an attorney "because appointment of counsel is sufficient to provide a pretrial detainee with 'meaningful access to courts.'" (quoting *Peterkin v. Jeffes*, 855 F.2d 1021, 1042 (3d Cir. 1988))). Accordingly, Hernandez's access to courts claim will be dismissed.

E. **Claims Based on Failure to Protect from COVID-19**

Finally, Hernandez alleges that prison officials are "depriving him of COVID-19 precautions" such as cleaning products "to clean [his] housing location." (Compl. at 9.) He further alleges that because of his asthma, he is "medically vulnerable" to COVID-19 and other viruses. (*Id.*) To state a constitutional claim in the context of COVID-19 management, Hernandez must allege facts to support a plausible inference that prison officials confined him in conditions that amounted to punishment or were deliberately indifferent to his serious medical needs. *See Hope v. Warden York Cty. Prison*, 972 F.3d 310, 325 (3d Cir. 2020). To meet this standard, the facts alleged must reflect that the challenged conditions were imposed "for the express purpose of punishment" or that the "Government knew of and disregarded an excessive

risk to [prisoners'] health and safety." *Id*. at 328-29 (citing *Nicini v. Morra*, 212 F.3d 798, 811 (3d Cir. 2000)).

Again, Hernandez does not allege how any individual Defendant was personally involved in the alleged deprivations. Thus, he fails to raise a plausible inference that any Defendant intended to punish him by depriving him of cleaning products or was otherwise deliberately indifferent to his medical vulnerability to COVID-19 or any other virus. Moreover, as grievance responses reveal, cleaning products were made available to all of the housing units at GWHCF and Hernandez was provided "with education to make a request for cleaning supplies to the Unit Managers" after submitting his grievances. (Compl. at 27, 31.) The grievance responses also reveal that "GWHCF follows COVID protocols as directed by the State Department of Health" and provides cleaning products and masks upon inmate request. (*Id*. at 32.) Where the facility has taken concrete steps towards mitigating the medical effects of COVID-19 in a detention facility, a prisoner will fall "well short" of establishing that the facility and its staff were deliberately indifferent toward his medical needs in light of the virus, even though they cannot entirely "eliminate all risk" of contracting COVID. *Hope*, 972 F.3d at 330-31. Accordingly, Hernandez's Fourteenth Amendment claims based on alleged deprivations of COVID-19 precautions will also be dismissed.

## IV. CONCLUSION

For the foregoing reasons, the Court will dismiss Hernandez's Complaint without prejudice. In addition, Hernandez's Motions for Appointment of Counsel (ECF Nos. 5, 6) will be denied without prejudice at this time as premature. *See Tabron v. Grace*, 6 F.3d 147, 155 (3d Cir. 1993) (in determining whether appointment of counsel is appropriate, the Court should first determine whether plaintiff's lawsuit has a legal basis). Considering Hernandez's *pro se* status, he will be given the opportunity to file an amended complaint in the event he can cure the defects the Court has noted as to his claims.

An appropriate Order follows.

**BY THE COURT:**

**/s/ Gerald Austin McHugh**

**GERALD A. MCHUGH, J.**